## LIVELY *vs.* ROBBINS.

[ACTION ON PROMISSORY NOTE, BY PAYEE AGAINST MAKER.]

1. *General rules for construction of contracts.*—In the construction of contracts, the cardinal rule is to effectuate, if possible, the intention of the parties; and in arriving at that intention, a greater latitude of construction is allowed, where the contract appears to have been written by an ignorant person, or one unskilled in the use of language. The language is to be construed in its popular sense, unless it is technical in its signification; and if the contract is susceptible of two constructions, it is to be construed most strongly against the party promising.

2. *Construction of special stipulation in note.*—Where an enrolled conscript procured a discharge from military service, in October, 1862, by putting in his stead a substitute; and executed to his substitute a promissory note, with sureties, payable on the 25th December, 1862, and containing a stipulation in these words: "The condition of the above note is, that if the *conscrip* should take J. B. R., the note to be void; if the *conscrip* does not take him, this note to remain in full force and virtue;" and when again enrolled, in February, 1863, was discharged on the ground that he was a miller,—*held*, that the condition on which the note was to become void had not happened. (PHELAN, J., *dissenting.*)

APPEAL from the Circuit Court of Jefferson.
Tried before the Hon. WM. S. MUDD.

THIS action was brought by Joseph B. Lively, against John B. Robbins, L. M. Robbins, and Thomas B. Robbins; was commenced on the 13th August, 1863; and was founded on a promissory note, executed by the defendants, which

was in the following words: "By the 25th day of December next, we, or either of us, promise to pay Joseph B. Lively, or bearer, the sum of seven hundred dollars, for value received of him. The condition of the above note is, that if the *conscrip* should take J. B. Robbins, the note to be void; if the *conscrip* does not take the said J. B. Robbins, this note to remain in full force and virtue; this 18th October, 1862." The record does not show what pleas were filed.

"On the trial," as the bill of exceptions shows, after the plaintiff had read in evidence the note on which the suit was founded, "the following were agreed on by the parties as the facts: Said instrument was executed by the defendants on the day the same bears date. Said J. B. Robbins was conscripted, and mustered into the service of the Confederate States, at Talladega, on the 7th September, 1862. The plaintiff agreed to, and did enter the service, as a substitute for the said J. B. Robbins, on or about the 14th October, 1862, in consideration of the sum of two thousand dollars; of which amount, thirteen hundred dollars were paid in cash, and the above instrument was executed for the balance. The said J. B. Robbins was thereupon discharged from the army, and returned to his home in Jefferson county, and commenced repairing his mill on or about the 16th October, 1862, and has remained at home since his return. After his return, said J. B. Robbins was not enrolled by the conscript officers of the Confederate States, until the 1st February, 1863, and, when enrolled, was discharged on the ground that he was a miller; and has, since then, successfully claimed his exemption as a miller. Said Robbins did not engage in keeping or running a mill until about the 15th December, 1862. At the execution of said instrument above set forth, said J. B. Robbins was thirty-four years old, and plaintiff was thirty-eight years old. The call which the president was authorized to make for men between the ages of thirty-five and forty years, under the act of congress approved September 2, 1862, was issued on the 3d November, 1862.

"The above being all the evidence in the cause, the court charged the jury, 1st, that the condition attached to the

note was to be construed to mean, that said note was to be void if said J. B. Robbins became legally subject to military service as a conscript before the maturity of said note; 2d, that, under the admitted facts, the plaintiff himself became subject to military service after the 3d November, 1862, and said J. B. Robbins also became subject to military service after that time, and the exemption granted to him by reason of the substitution of the plaintiff expired after that time; and, 3d, that it was not necessary for the defendants, in order to defeat a recovery on the note, to show that said Robbins had been conscribed, and actually placed in the military service."

The plaintiff reserved exceptions to these charges, and he now assigns them as error.

PORTER & MARTIN, for appellant.

J. C. MORROW, *contra.*

STONE, J.—In the construction of contracts, the cardinal rule is, to effectuate, if possible, the intention of the parties; and where the contract appears to have been drawn up by a person unskilled in the use of language, greater latitude of construction is permissible, in arriving at that intention.—See Shepherd's Digest, 497, §§ 124, 126. When a contract admits of two constructions, one of which will destroy, and the other uphold it, the latter construction must prevail; thus construing the contract most strongly against the party promising.—Shepherd's Dig. 499, § 146; *Livingston v. Arrington,* 28 Ala. 424. Language, which is not technical in its signification, should be construed in its popular sense.

[2.] The phrase, "if the conscrip should take J. B. Robbins," is certainly not very definite in its meaning. We think, however, that under the rules above laid down, the circuit court erred in its construction of the contract declared on. The parties could not have meant, "if the conscript law take J. B. Robbins," then the note to be void. The "conscript law" had already taken him, and he was purchasing his exemption from its operation. A more reasonable solution of the imperfect language employed is, that

the parties had in view the actual placing of Mr. Robbins in the conscript service. Conscription was what the parties were looking to, and providing against; and conscription, in its popular sense, means a finished, complete enrollment of the soldier in the public service; not simply the extension of the law so as to embrace him. Mr. Robbins had been enrolled as a conscript, and was in camps; and he sought to obtain an exemption, by putting in a substitute. He paid his money, and executed his note, that he might get out of the conscript service, and remain out. The unpaid part of the consideration was made conditional; not to be paid, if Mr. Robbins was placed in the conscript service. He stipulated the event in which he was not to pay, and that event has not happened. He was not taken by the conscript officer, or the conscription—was not placed in the conscript service. He obtained a discharge from the service, by means of the substitute he put in, and he was not placed back in the service. The contingency on which the contract was to become invalid, has not happened.

Reversed and remanded.

PHELAN, J.—I differ from the majority of the court upon the construction given to the note sued on, and concur with the judge below, in holding that the words "if the conscrip should take J. B. Robbins," &c., should be construed to mean, *if the conscript law should take*—that is, *include*, or *make liable*. I am of opinion the judgment below should be affirmed.