(79 South. 476)

CITY OF SELMA v. JONES.    (2 Div. 664.)

(Supreme Court of Alabama.    May 16, 1918.
Rehearing Denied June 20, 1918.)

1. NUISANCE ☞6—CITY DUMPS—PUBLIC AUTHORITY.
    The fact that a city is given authority by law to establish and maintain a sanitary system for the community, and that a dump pile is a part thereof, does not prevent the placing and maintaining of the dump from constituting a private nuisance.

2. NUISANCE ☞1—DEFINITION.
    A "nuisance" is anything that works hurt, inconvenience, or damage to another; and the fact that the act may otherwise be lawful does not keep it from being a nuisance, but the inconvenience complained of must not be fanciful.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Nuisance.]

3. NUISANCE ☞59—"PUBLIC NUISANCE."
    A "public nuisance" is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public or Common Nuisance.]

4. NUISANCE ☞1—"PRIVATE NUISANCE."
    A "private nuisance" is one limited in its injurious effects to one or a few individuals.
    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Private Nuisance.]

5. NUISANCE ☞71—PUBLIC NUISANCE—WHO MAY SUE.
    Generally a public nuisance gives no right of action to any individual, but must be abated by process instituted in the name of the state, under Code 1907, §§ 5193–5196.

6. NUISANCE ☞26 — PRIVATE NUISANCE — WHO MAY SUE.
    A private nuisance gives a right of action to the person injured, under Code 1907, §§ 5193–5196.

7. NUISANCE ☞72—PRIVATE NUISANCE—CITY DUMP.
    A city dump, part of the sanitary system of the city, may be a private nuisance as to adjacent property owners, whose damages are different from those of the public.

8. JURY ☞14(12)—NUISANCE—ABATEMENT.
    An ancient English rule, as to granting injunctions to abate nuisances, to the effect that the question of nuisance vel non must be established by the verdict of a jury, does not prevail in this state.

Appeal from Circuit Court, Dallas County; B. M. Miller, Judge.

Bill by Emma Jones against the City of Selma to abate a nuisance. From an order overruling a demurrer to the bill, defendant appeals. Affirmed.

Leo Leva and Reese & Reese, all of Selma, for appellant. Arthur M. Pitts, of Selma, for appellee.

MAYFIELD, J.    Appellee filed her bill against appellant to abate a nuisance. The alleged nuisance consisted of a dump pile, created and maintained by the city, near to the premises of complainant. The nuisance is alleged in the fifth and sixth paragraphs of the bill as follows:

"(5) That the said dumping place is not a fit or suitable plant to be established in a residential section of the city; that the plant, as well as the way in which the same is operated, is a nuisance, which is continual, and constantly recurring; that the board of health of Dallas county has declared the said dumping place where located a nuisance, and has requested the city of Selma through her duly authorized officers to abate the same; that the city of Selma, by and through her duly authorized officers, agents, servants, and employés, continues to operate the said dumping plant on the said place; that unless the city of Selma, her officers, agents, servants, and employés, are restrained from operating the said dumping place, your complainant will be compelled to inhale and smell air polluted by the noxious odors,

---

[1] 200 Ala. 80.

vapors, and gases that arise from the opening in the sewer, and from the emptying of the cans of human feces and excreta that has remained closed in said cans for almost a week's time.

"(6) That complainant's home has been rendered valueless as a home by the operation of said plant; that it is a place unfit for a human being to reside in as long as the city is permitted to continue to so operate said dumping place on said lots in said residential section of the city of Selma; that the injury to her property as above set forth is of such a nature, and so recurring each day, that she cannot be fully compensated in damages; that under the facts as above set forth she has not an adequate remedy at law; that the city started to operate the said dumping place in the year 1917, and is continuing to operate the same."

The city demurred to the bill, assigning various grounds, among them being the grounds that the bill showed the defendant to be a municipality, and as such authorized by law to establish and maintain a sanitary system, and that the alleged nuisance was a necessary part of such system, and that that which is authorized by law cannot be a nuisance; that the bill showed complainant to have a plain and adequate remedy at law; that the bill showed a public nuisance, and showed no damages or injury to the complainant, different in kind from that suffered by the public; that to grant the relief prayed would, instead of abating a nuisance, create one, in that it would destroy the sanitary system of the city. The trial court overruled the demurrer, and the respondent appeals.

[1] We are of the opinion that the trial court ruled correctly. The fact that the city is given authority by law to establish and maintain a sanitary system for the community, and that the dump pile is a part thereof, does not prevent the acts complained of from constituting a private or a public nuisance. Such authority, conferred on the city by law, is to promote the health and comfort of the citizens, and not to impair or destroy the health or comfort of any of the citizens. There does not appear on the face of the bill any attempt thus far on the part of the Legislature to confer authority on the city to do what would otherwise constitute a nuisance. Hence the question is not here presented whether or not the Legislature could authorize the city to do what, without such authority, would be a nuisance. This question was presented to this court in the cases of Adler v. Pruitt, 169 Ala. 213, 53 South. 315, 32 L. R. A. (N. S.) 889, and Murkerson v. Adler, 178 Ala. 622, 59 South. 505. In the first of these cases it was ruled that:

"Where a county, through a commission created by a local act authorizing a sewer system and purification plant constructed said plant, after contracting with an individual to pay for the cost of the plant and its maintenance, in consideration of the exclusive right to use the products of the plant, the county stipulating for the exclusive control of the purification of the sewerage, and the plant was built and the individuals operated it, and paid the cost thereof directly, but the plant was unequal to the accomplishment of its purpose, and a nuisance was created by its operation, in the absence of an express statutory provision, it will not be assumed that it was intended to legalize an act necessarily resulting in a nuisance, nor that the system would have been constructed except for treatment of the sewerage in a purification plant, and hence the proximate cause of the nuisance was not the statutory authorization, but was the operation of the plant by the individual, and consequently he was liable therefor." 169 Ala. 213, 53 South. 315, 32 L. R. A. (N. S.) 1889.

The following expression, used in the opinion in that case, may be applied to this case:

"Those are joint tort-feasors who contribute to the tort with common intent, * * * not of course the intent to work injury to the plaintiff, but the intent to maintain the purification plant which did result in injury. If it be assumed for a moment that the defendants co-operated with private individuals, as they did with the county and its commissioners, it would seem to be clear that they thereby became liable with those individuals as joint tort-feasors, not because defendants furnished the money with which to build the plant, nor because they contracted to receive the valuable separated constituents of the sewerage, but because they actively participated in the daily operation of the plant." 169 Ala. 221, 222, 53 South. 318, 32 L. R. A. (N. S.) 889.

A nuisance is thus defined by both the statutes and the decisions in this state:

[2] A nuisance is anything that works hurt, inconvenience, or damage to another; and the fact that the act may otherwise be lawful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful, nor such as would affect only one of fastidious taste, but it should be such as would affect an ordinarily reasonable man.

[3-6] Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals. Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state; a private nuisance gives a right of action to the person injured. Code, §§ 5193–5196. "Nuisance" signifies "anything that worketh inconvenience," and a common or public nuisance is defined to be an offense against the public, either by doing a thing which tends to the annoyance of all persons, or by neglecting to do a thing which the common good requires. State v. Mayor and Aldermen of Mobile, 5 Port. 279, 30 Am. Dec. 564; Ferguson v. City of Selma, 43 Ala. 398. Mr. Wood, in his work on Nuisances (section 753) states the law to be that a person or corporation authorized by law to do a particular thing is not indictable for a nuisance arising therefrom as a natural and probable result, but that "if the nuisance is not the necessary result of the act or work authorized, or if it might be exercised in such a way as to obviate the nuisance, legislative authority will not be inferred from the grant to create the nuisance,

and will not operate as a protection or excuse therefor, either against an indictment or a suit in behalf of the public at law or in equity to abate the nuisance." Judge Dillon says a municipal corporation has no right to license or maintain a nuisance. Mun. Corp. §§ 374n, 378n. This doctrine is fortified by Richardson v. Vermont Cent. R. Co., 25 Vt. 465, 60 Am. Dec. 283; Pine City v. Munch, 42 Minn. 342, 44 N. W. 197, 6 L. R. A. 763.

[7] If the averments of this bill are true, and on demurrer they must be so treated, the city had created and was maintaining a nuisance, and complainant's damages were different from those of the public, in such sense as to authorize the maintenance of this bill. While it is true the dump pile was not on complainant's land, her land and property were subjected to the nuisance, on account of proximity to the dump pile. The noxious and offensive odors and gases emitted from the dump pile, according to the averments of the bill, were naturally cast upon complainant's premises, so as to render them less desirable and less valuable for the uses to which they were put. The averments bring the bill clearly within the rules laid down by this court in the cases of Hundley v. Harrison, 123 Ala. 292, 26 South. 294, English v. P. E. L. & M. Co., 95 Ala. 264, 10 South. 134, and Rouse v. Martin, 75 Ala. 515, 51 Am. Rep. 463. The general rule to be deduced from all our cases on the subject has been thus stated or approved often by this court:

"Any establishment erected on the premises of the owner, though for the purpose of trade or business lawful in itself, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, directly causes substantial injury to the property of another, or produces material annoyance and inconvenience to the occupants of adjacent dwellings, rendering them physically uncomfortable, is a nuisance. In applying this principle, it has been repeatedly held that smoke, offensive odors, noise, or vibrations, when of such degree or extent as to materially interfere with the ordinary comfort of human existence, will constitute a nuisance." Hundley v. Harrison, 123 Ala. 298, 26 South. 295.

[8] This text cites Rouse v. Martin, supra. The ancient English rule as to granting injunctions to abate nuisances, to the effect that the question of nuisance vel non must be first established by the verdict of a jury, does not prevail in this state. This is pointed out in the above case, and in previous cases cited in the opinion. The rule in this state is probably best stated in Nininger v. Norwood, 72 Ala. 277, 47 Am. Rep. 412, to the effect that:

"The jurisdiction of the court to enjoin the erection or the continuance of private nuisances, compelling their abatement, at the instance of the party aggrieved, is well established. * * * There is, in the contemplation of the court, a very just distinction between injuries in their nature temporary and fugitive, and injuries permanent, continuous, constantly recurring. In reference to temporary injuries, the intervention of the court may depend upon the adequacy of legal remedies. But when the injury is permanent, continuous, constantly recurring, there may be a remedy at law, but its inadequacy is obvious. The court of law cannot restore the party complaining to the condition in which he was before the wrong was done, and in which he has the legal right to remain."

It was added, referring to the facts of that case:

"Nor, if the right of the complainant is clear —if, as a matter of law, the lands of the defendants are burdened with the servitude claimed— is it essential that, as a condition precedent to the interference of the court, the right should have been established by a verdict and judgment at law. Substantial, actual injury has resulted, and there can be no necessity for sending the party to a court of law, for the determination of a mere legal question, compelling submission to the wrong during the pendency of the action."

It follows that the trial court properly overruled the demurrer to the bill.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.