109 So.2d 664

W. C. STRICKLAND et al.

v.

Douglas LAMBERT.

8 Div. 938.

Supreme Court of Alabama.

Feb. 19, 1959.

Beasley & McCutchen, Tuscumbia, for appellants.

Jesse A. Keller, Florence, for appellee.

COLEMAN, Justice.

Appellee, complainant below, filed bill of complaint seeking to abate an alleged nuisance consisting of the raising and keeping of chickens by appellants, respondents below, as described in the bill. From decree overruling demurrer, the respondents appeal.

Appellants argue only one proposition, to wit, that if the conduct alleged constitutes a nuisance at all, it is a public nuisance, not a private one, and that the trial court erred in overruling those grounds of

**582**

demurrer taking the point that the bill fails to allege that complainant has suffered from the alleged nuisance a special injury, real and distinct from that suffered by the public, and, therefore, under §§ 1084, 1086, Title 7, Code 1940, complainant is not entitled to maintain this suit.

 Sections 1084 and 1086 recite as follows:

"§ 1084. Nuisances are either public or private. A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effects on individuals. A private nuisance is one limited in its injurious effects to one or a few individuals. Generally, a public nuisance gives no right of action to any individual, but must be abated by a process instituted in the name of the state. A private nuisance gives a right of action to the person injured."

"§ 1086. If, however, a public nuisance causes a special damage to an individual, in which the public do not participate, such special damage gives a right of action."

This court has said:

"* * * Generally a public nuisance gives no right of action to an individual, but must be abated by process instituted in the name of the state. An individual complaining of a public nuisance must show some special injury to himself different from the common injury to the public. (Citations omitted.)" Scruggs v. Beason, 246 Ala. 405, 407, 20 So.2d 774, 775;

and also:

"It is established in this jurisdiction that equity may abate a public nuisance, and that a private person can maintain a bill for abatement of such nuisance when it is shown that such party has suffered a special injury therefrom, which is real and distinct from that suffered by him in common with the public at large, and is so continuous in nature that the legal remedy for damages would be inadequate. (Citations omitted.)" Hanna v. Harman, 230 Ala. 620, 621, 162 So. 109.

 We think the allegations of the instant bill establish a private nuisance or a public one from which complainant suffers a special injury different in kind from that suffered by the public generally.

The bill alleges that complainant and respondents both own their respective dwelling houses situated in the City of Florence in an area zoned "B" residential; that complainant's home is located on the south side of Henson Drive, a public road, and that respondents' home is located on the north side of said Drive facing the complainant; that respondents raise and keep chickens on their aforesaid premises; "That Complainant, in the summer of 1955, inspected the premises of the Respondents and discovered that Respondents allowed the manure droppings from the thousands of chickens to accumulate and stand for days and weeks at a time; that the Respondents did negligently allow water to mix with said chickens' droppings and manure therefore making convenient breeding places for the said flies; that the said chicken droppings became several feet high before the Respondents would remove the same; that Respondents failed to spray or use any other proper preventive to abate the odor and said flies; and that Respondents on occasions would leave dead chickens lying about their premises and would burn chicken feathers on their said premises"; that in the summer of 1955, the odors from the poultry plant were manifest and permeated the entire area around complainant's home; that: "In fact the odors became so strong that it became impossible for the Complainant and his family to properly enjoy their meals, and they had periods of nausea and sickness due to said odors. The odors so increased during the summer of 1955 that Complainant could not use and enjoy his back yard, and his children could not play in said

yard for any appreciable length of time, because of the said odors. The Complainant was prevented from having guest(s) and friends to his house because of said odors; that the presence of flies soon became intolerable; that great swarms of flies stayed in and about the complainant's home and yards, and it was humiliating and embarrassing to the Complainant in attempting to entertain friends because of the presence of the flies and the said odor; that not only was there the odor of the manure and droppings of said chickens, but this was mingled with the odor of dead chickens and burnt feathers; that the flies present were not only the ordinary house flies, but larger and 'green colored' or 'blow flies' which stayed continually on the Complainant's premises; that this condition has become increasingly worse, both in the summer of 1956 and in the summer of 1957. * * *"; "That the Complainant in the summer of 1955 did complain to the Respondents about the condition of their premises, and Respondents refused to do anything about it. The Complainant and several of his neighbors did thereupon complain to the commissioners of the City of Florence, and to the Health Officials of Lauderdale County, and the said Commissioners did thereupon conduct a hearing in the City Hall of Florence in the summer of 1955 with the Respondents and the Complainant and several of the complaining neighbors in the neighborhood attending. At said hearing the Respondents did promise to spray and take the other necessary preventive measures to abate the odor and the presence of flies; however, the Respondents have not kept their promise in this regard, and have done nothing to abate the odor and the presence of said flies; that on numerous occasions since the summer of 1955 the health authorities of Lauderdale County, Alabama have visited the premises of the Respondents, and Respondents have promised on each occasion to take the proper measures to abate the odor and the said flies, and Respondents have further promised that they were going to move their chickens to a rural area near Cloverdale, Alabama, but the Respondents have failed and refused to carry out these promises. * * *"

With respect to a poultry production operation in the City of Tuscaloosa, this court said:

"* * * While the brooders described in the bill do not constitute a nuisance per se, they do constitute a nuisance when located and maintained and operated in the manner with the resultant effects alleged in the bill, interfering with the comfortable enjoyment of the property of others in the surrounding area. (Citations omitted.) The situation as alleged in the bill is not one which would affect only one of fastidious taste, but is such as would affect an ordinary reasonable man, and is accordingly a nuisance as described by § 1081. McClung v. Louisville & N. R. Co., 255 Ala. 302, 51 So.2d 371. But as pointed out, we need not limit the definition of a nuisance to the statutory definition contained in § 1081. Authorities, supra." Duncan v. City of Tuscaloosa, 257 Ala. 574, 578, 60 So.2d 438, 441.

This court has sustained the granting of injunctions to abate nuisances consisting of emitting obnoxious odors and gases from a tobacco drying house. Hundley v. Harrison, 123 Ala. 292, 26 So. 294; a stable, Kyser v. Hertzler, 188 Ala. 658, 65 So. 967; and a sewer dump, City of Selma v. Jones, 202 Ala. 82, 79 So. 476, L.R.A. 1918F, 1020.

City of Selma v. Jones, supra, was an appeal from decree overruling demurrer to a bill to abate a nuisance, which consisted of a sewer dump pile created and maintained near the premises of complainant. The bill in that case was filed by an individual. One ground of demurrer was:

"that the bill showed a public nuisance, and showed no damages or injury to the complainant, different in kind from that suffered by the public;" 202 Ala. 82, 83, 79 So. 476, 477.

This court held the demurrer correctly overruled and said:

"If the averments of this bill are true, and on demurrer they must be so treated, the city had created and was maintaining a nuisance, and complainant's damages were different from those of the public, in such sense as to authorize the maintenance of this bill. While it is true the dump pile was not on complainant's land, her land and property were subjected to the nuisance, on account of proximity to the dump pile. The noxious and offensive odors and gases emitted from the dump pile, according to the averments of the bill, were naturally cast upon complainant's premises, so as to render them less desirable and less valuable for the uses to which they were put. The averments bring the bill clearly within the rules laid down by this court in the cases of Hundley v. Harrison, 123 Ala. 292, 26 So. 294; English v. P. E. L. & M. Co., 95 Ala. [259] 264, 10 So. 134, and Rouse v. Martin, 75 Ala. [510] 515, 51 Am.Rep. 463. The general rule to be deduced from all our cases on the subject has been thus stated or approved often by this court:

" 'Any establishment erected on the premises of the owner, though for the purpose of trade or business lawful in itself, which, from the situation, the inherent qualities of the business, or the manner in which it is conducted, directly causes substantial injury to the property of another, or produces material annoyance and inconvenience to the occupants of adjacent dwellings, rendering them physically uncomfortable, is a nuisance. In applying this principle, it has been repeatedly held that smoke, offensive odors, noise, or vibrations, when of such degree or extent as to materially interfere with the ordinary comfort of human existence, will constitute a nuisance.' Hundley v. Harrison, 123 Ala. [292] 298, 26 So. [294] 295." 202 Ala. 82, 84, 79 So. 476, 478.

In the instant case, according to the bill of complaint, the odors and flies emanating from respondents' poultry plant move onto complainant's land and into his home, thereby disturbing his comfort and endangering his health. The injury to complainant's comfort and the threat to his health in his home is an injury to his right to use and enjoy his property free from the odors and flies, and is an injury in which no one else participates, although other neighbors may suffer a like injury to enjoyment of their separate homes.

In Birmingham News Co. v. Little, 226 Ala. 642, 643, 644, 148 So. 398, Anderson, C. J., writing for the court said:

" * * * Section 9274 of the Code of 1923 (§ 1084, Title 7, Code 1940), in defining a public and private nuisance, does not require that the injury must be sustained by only the plaintiff to give the right to complain. It says: 'A private nuisance is one limited in its injurious effect to one or a few individuals.' * * * " (Parenthesis supplied.)

The law does not require that before a party can abate a nuisance he must show an injury which is unique to him. Neither the fact that the public authorities held a hearing on the matter, nor the fact that other neighbors suffer a like injury in enjoyment of their respective properties, operates to destroy the special character of the damage to complainant in enjoyment of his property.

It follows that the Circuit Court did not err in overruling the ground of demurrer insisted on in this appeal.

Affirmed.

SIMPSON, STAKELY, GOODWYN and MERRILL, JJ., concur.